May it please the Court, my name is Sandy Speckhoff. I'm from San Francisco. I represent the plaintiffs who are appealing the dismissal of their securities fraud class action. I was listening to the first case, and I heard counsel say that the plaintiff had 10,000 interrogatories. I'm here to try to just get one. The appeal in this case is very narrow. We're not appealing the dismissal on the merits. We're appealing Judge Stotler's denial of leave to amend. And Judge Stotler was the same judge in eminence capital. And I was listening to the prior argument. In eminence capital, this Court specifically held that reasons have to be given. And Judge Stotler gave a reason. She said futility, but she never gave the reasons why the leave to amend was futile. And we made a very substantial submission to her, aided by the defense. Sotomayor Mr. Speckhoff, are we looking at the third complaint or the fourth amended complaint? Speckhoff Well, we're not raising the merits of the third consolidated complaint. We are based on two elements, a request for leave to amend filed with our opposition to the motion to dismiss, which was supported by two declarations, one of an expert in project management and one of counsel, summarizing his re-interview of our witnesses, and then a compilation of an analysis of various documents that the defendants submitted for judicial notes. Roberts Let me be sure I understand precisely what's before this panel. There was a third amended complaint which was rejected. Speckhoff Right. And we're not Roberts And there's an issue as to whether the reasons were detailed enough. Speckhoff Not as to the dismissal. Roberts Okay. Speckhoff It's as to the denial of leave to amend. We are not challenging the dismissal on the merits of the third amendment of the third complaint, Judge O'Scanlon. Roberts All right. Well, we're seeing the third amendment complaint in that context. But the problem I have is, did Judge Stotler ever have a chance to look at the fourth amended complaint? Speckhoff No, she did not. What she had in front of her was what I just said. She had a opposition to the motion to dismiss, which included arguments seeking leave to amend. Supported by two declarations and an analysis of defense exhibits. With the motion to dismiss, the defendants presented about 20 of these project reports to the Court, requesting judicial notice of those reports. In response, we did not oppose judicial notice of the documents. What we opposed judicial notice of was counsel's interpretation of the documents. And instead, we went back to our witnesses and we asked them to look at these documents and then summarize their understanding and explanations of those documents. They are former floor employees and also a former GE employee and a former consultant from Canada for the Saudi Arabian government. And they explained these documents and they explained them in a declaration of, through the declaration of counsel. Sotomayor All right. I'm still trying to focus on what dignity do we give to the fourth amendment  Speckhoff Yes. Sotomayor Because the trial judge never ruled on it. Speckhoff Correct. Sotomayor And obviously, we can't rule on it. Speckhoff Well, that remains to be seen, Judge O'Connell. Sotomayor Okay. Shall we? Speckhoff Under the jurisprudence of this Court, the Orion decision cited in the briefs, Logan v. Brougham, which is cited in the letter under Rule 20HA, to Your Honor, which follows Orion, and other cases that we have cited from other circuits, including Werner v. Werner in the third, the Dawson case in the seventh, the Orthman case in the seventh, and the Pegram case in the Supreme Court, this Court can consider submissions to it, to it for the first time on appeal, on the limited issue of leave to amend. It's the only place that I'm aware of where this Court can look at proffers of evidence. Breyer What are we looking for? Are we trying to evaluate? Let me finish. Sotomayor I'm not pleased. Breyer We could do one of two things. We could look at it on our de novo review of the proffer, in effect, to find out whether Judge Stotler abused her discretion, which is how I understand our role here. And in our de novo review, are we looking at the proposed fourth amended complaint to sit, essentially, in her shoes and decide, aha, if this is put before Judge Stotler, it meets the PSLRA standards, or is it something less than that? Brougham Well, I think you can, at a minimum, at a minimum, evaluate the proffers made both to Judge Stotler and to this Court in the brief, and be informed by the proposed fourth amended complaint as to the nature of what we would submit in a fourth amended complaint if it went back to Judge Stotler and say, this is enough, a grant leave to amend. But I have to say, Judge Fischer, this is a 1997 case. The best we have is in this fourth amended complaint. And you are in as good a position as Judge Stotler to decide this, because it is de novo review. As I understand eminence capital, when a district court exercises discretion in deciding prejudice, in deciding bad faith, in deciding delay, dilatory tactics. But on the question of futility, it's a question of law. Are the submissions of the plaintiff for leave to amend sufficient to withstand a motion to dismiss? You are in as good a position to decide that as the district court. It is you don't. I agree you don't have to go that far. You could send it back to Judge Stotler with an order to grant leave to amend and let her take up another motion to dismiss. What I'm suggesting to Your Honor is that you would then get that back on appeal. When we say it's an issue, is it futile? Is it clear that there is no way you could amend that complaint? The fact that we say, assume you would prevail on it, the fact that we would say it's not clear that it's futile doesn't mean that we are saying that the fourth amended complaint or anything like it is sufficient and that Judge Stotler has to rule for it. That is correct. You could say it's not futile, send it back, and we'd go through another motion to dismiss round. What I'm saying to you, Your Honor, is because it's de novo review, you have the power to look at the Fourth Amendment complaint and say, as a matter of law, it's sufficient, go back, let's go forward with this litigation. And I should be able to say that. Kennedy, I'm not so sure, answers the question. I mean, it may be de novo to the extent of taking your first step, whether it puts us in the position of jumping over the hurdle of the district court. I'm not so sure that's the level of de novo review we're talking about. It may not be. It may not be. And it's a jurisprudential decision on your part. I'm not – I'm suggesting to you that if, in deciding futility, you will be coming so close to deciding whether the Fourth Amendment complaint passes muster as to not make the parties go through another round of briefing in the district court and another appeal. Now, that's part of the whole game of standards of review. You know, we don't really have to decide it. When we say it's futile, it's not futile, that doesn't mean it really isn't futile. It doesn't mean you've really succeeded. It may mean that it's not clear that it's futile. It's not so clear that you ought to deprive the party of his right to pursue the suit. You know, it's like the difference in the Supreme Court's finding on the case last week about the Family Medical Leave Act, the difference between the standard there and the standard in all the cases where federalism controls. This is part of the whole game we play. I appreciate that. I appreciate that. I understand standard of review. What I'm saying to you is that the Court has the power to do it in the interest of justice. Well, there's no great interest in justice, it seems to me, in our deciding the question on the merits instead of letting Judge Stotler, if we would have been persuaded that there's enough here that she should see a fourth complaint. I can't see a particular interest of justice that requires that we decide that now instead of letting her decide. Well, it would mean a couple of more years of delay if she called it wrong and dismissed again, and we'd be back up here on appeal, we're talking about two more years of delay. There is justice in not delaying Judge Reinhart. That being said, if you rule on the basis of futility, I'll carry that message back and make the strongest showing we can in response to a motion to dismiss, and maybe Mr. Daniel will get the message, if the message is clear and strong enough, that a motion to dismiss would not be in the interest of the Court. It's a little unclear as to whether we can consider the fourth amended complaint, which, as Judge Gannon points out, is presented for the first time on appeal. It does seem from the cases, in Eminence Capital, for instance, the district court was not shown what the amended complaint would be like, and we didn't have to see an amended complaint to say that it's not clear that this is not futile. And we have said in some cases, as you say, that counsel's argument on appeal as to how it would not be futile is something that we can consider. So I suppose you could argue everything in your brief if we gave you enough time. And we could consider that. I mean, everything in your fourth amended complaint, you could argue to us. Yes. And it's in the brief. And we would be able to consider it. Yes, it is. But let me suggest to you that there is precedent. In the Dawson case in the Seventh Circuit, which is cited in the brief, in addition to the proffer, the Court took judicial notice of a complaint that the plaintiff said came from another case, but the plaintiff said they would use in that case, and that was submitted on appeal. The Seventh Circuit is the judge Posner and Judge Easterbrook are the architect of the rule of accepting proffers on appeal. And so I think it informs your decision on futility. I'm sure they'd be happy to do that. Well, in Orion, Dawson and Orsman were cited. Orion is a Ninth Circuit case, follows the Seventh Circuit rule. Now, suppose we were to say that we're not interested in looking at amended complaints that haven't been given to the district court, where would you be on your futility argument based on your briefs and your oral argument, which we can consider? Well, you can consider the proffer made in the district court. The difference between the proffer and the district court is clear. We can consider what the district court has. What else do you have that we should consider, plus what's in the proffer to the district court? Okay. The briefs take the district court proffer and repeat them witness by witness, so that this Court can see that when we referred in the declaration to Judge Stotler that people in the finance department said something, we now describe that person as a former finance director and his access to the information and his discussion with others and who received the information and who visited Rabig and who is the source of that information witness by witness. The difference between the proffer on appeal and the proffer to the district court is the witness by witness recitation of it. Well, if we're getting into that, what is your strongest witness or piece of evidence that establishes scienter? In other words, a knowing decision by the management of this company to lie in their financial reports to the public. Well, I think if you look at the summary in the brief of the CW1, the former finance director, you will see the full scope of the financial fraud. He said that earnings were taken from 95 and added to 96, 20 million in each quarter, $60 million deferred, improper earnings management. He said that by the fall of 1996, the company saw that they would be losing money on this project, and he noted that in Exhibit A provided by the defense compared to Exhibit G, that costs had increased from $100 million to $125 million over 6 months between March and September. That's $25 million. He and four other witnesses said that if they didn't meet the completion cycle, the first completion cycle in April of 97, they would be subject to liquidated damages penalties of $25 to $30 million. So this is an $11 billion a year company, and $25 million is, I won't say it's a drop in the bucket, but it's certainly on the borderline of materiality. It's an $11 billion revenue company. Right. We're talking earnings. This company was talking about forecasted earnings. It forecast for 1997 earnings of $300 million, earnings. It came in at $146 million. That's an almost $160 million shortfall. And guess what they sued General Electric for, $160 million. There is an earnings correlation between the losses at this project and the earnings shortfall of the company. It's an earnings case, Your Honor. It is not a revenue case. Don't be misled by the billions of revenues. It's profits that are critical. And it's the profit recognition in 96 and the profit projections for 97 that caused the stock to go up because they overestimated their earnings in 96 and then the air fell out in 97. But even in 97, when they finally admitted to the losses at this Saudi Arabia project, they only reported in their 10-K and 10-Q some $85 million of the $160 they said they lost. So where do you account for the other $75 million? They say it's in these pieces of paper. But these pieces of paper are not filed. These are internal documents. They're not filed with the SEC. There are no, no 10-Q or 10-K forms for 96 that specifically identify losses on the Rabig project. The first time you hear about those losses are in 97, and they don't even mention Rabig. They're too embarrassed to mention it, so they keep it quiet. They talk about a project in another country. The first time I found out that it was Rabig was when Mr. Danio in the record mentioned that it was Rabig. He said in February of 97, they announced a large loss in Rabig. This is on ER-20. They didn't identify Rabig in their 10-K. They identified a ______. Is that actionable, that in and of itself? No, it's not. But what I'm suggesting to you is, it was part of a scheme to overstate 96 revenues, to hold back the losses in 97. CW1 says they pushed out the losses and covered them up with the deferred revenues from 95. Read CW1's account. But don't be misled into putting all of our eggs in CW1's basket. It's an interlocking case of many witnesses that put this together. There's corroboration from other witnesses. Five witnesses talk about the liquidated damages. You will find eight witnesses talking about the knowledge of the senior management of the company. At least one of the witnesses said that the CFO, Mr. Conaway, who's a defendant, received these reports. So he kind of knew what was going on. Mr. Coble, one of the defendants, visited the Rabig project. He knew what was going on. The CEO, Mr. McCraw, sent the red team to try to save this project. He knew what was going on. In fact, shortly after the class period, when the thing vallied up, Mr. Rollins, a defendant, the chief administrative officer, I believe, Mr. McCraw and the new CEO, McCraw, was fired. And they say, well, there's no motive for this case. The motive is save my job and save my company, and by the way, give me a $3 million bonus for 96 while I prop up the company's revenues. Can I ask a question on CW1? I don't have the full thing here, but at some point he said that floor improperly reserved profits of $60 million in 1995. Right. And then applied 20 of it to the earnings for the second, well, the last three quarters of 96. Okay. Now, I can't remember whether he said just improper. What's the explanation? I know he said it was designed to boost 96 results and were neither legitimate nor conservative. Right. Is that all he says about it? I mean, how else is it improper? Well, it's improper. And why is that improper? We point out in the briefs, financial accounting standards board concept two and SEC policy, which say that you must recognize earnings when they are earned and that it is improper to distort the company's earnings by deferring them to later periods to cover volatility in the company. If volatility is the true picture of the company, to flatten out their earnings, to make it look as if it's consistent and not volatile is misleading the public, Judge Fischer. So is it automatic? I mean, there's no reason to defer profits or reserve profits in this case? I say in the brief there may be legitimate reasons, but the witness says there were no legitimate reasons and there are policy guidelines in the SEC. Does he say why there are no legitimate reasons? Well, he says yes, they were. He combines it with his ‑‑ their failure to take the ‑‑ to record the losses on the projects and says what they were doing was propping up their 96 earnings. In anticipation of those? Because ‑‑ They had profits. You say they had profits. He said there were profits of 60 million in 95 that should have been recognized. In 95. But weren't, were reserved. Correct, correct. Okay. And then because they knew in 95 that they were going to have losses in 96? No, they didn't know. They ‑‑ So what's the improper ‑‑ that's what ‑‑ what's the impropriety of reserving in 95? If there was no ‑‑ They used it in 96, but what's the linkage? The presumption is you recognize it when it's earned. There's got to be a legitimate business reason to defer it. Well, he's the CFO, right? Or is the ‑‑ I think he's the finance. No, he's one of the finance directors. Okay. So what is he ‑‑ what was the ‑‑ what are you ‑‑ what are you ‑‑ or is he saying was the purpose when it was done? It was reserved in 95? Correct. Okay. And what's the improper purpose at that time, other than if FASB said he should have? Shouldn't have done that. Correct. Okay. And so there, but what's the connection to RBIG? Ah. So they have this slush fund. Well, they have slush fund. They don't have to use it. They have it. It's improper unless they have a legitimate business reason. Okay. So that's simply creating a slush fund improperly that they can use for any ‑‑ Exactly. Okay. Exactly. And so now comes, now comes the disaster in the, they didn't know about RBIG in 95. They bid on it in November of 95. They, two months before they got the contract that created the problem. If you look at their own complaint, they say they bid in November and they didn't get the contract until January. That's a funny bidding process. That's not fraud, but it's certainly bad business. But to parlor that with the disaster in cost that started the slide, they've got a slush fund. So you do two things. You don't declare your losses and you, and you, and you paper it over with deferred earnings. Now, I don't know what the proof is going to be at trial and I don't know what explanation floor is going to give for it, but they tried to give an explanation by putting these 20 documents into the record to refute our claims. Then our witnesses came in and said, no, that doesn't refute anything. These documents are not complete, but they do show substantial losses and a substantial swing in profit projections. They say in their briefs, oh, no, well, in the footnotes at ER 417, well, this is, you know, this is what we put in our 10-Ks and 10-Qs. Well, you can't find it in the 10-Ks and 10-Qs and their footnotes are not evidence, certainly not at the pleading stage or at any stage. Our proffer is a proffer of evidence that we would put into a complaint. And I think that's sufficient to show falsity and scienti. Mr. Sviggum, we're over your time already, and I'm sure you want a couple of minutes for rebuttal. I do. Thank you. May it please the Court. My name is Bruce Vanue and I represent Appalese. The first thing I'd like to do is get back to what I consider to be the only issue before the Court, which is the leave to amend that was made below. And in doing that, I think it's very important to get back to and get to the reality of actually what was asked for by the plaintiffs below. Because, frankly, I didn't hear that today, and it's unfortunately something we did not focus on enough in our brief. Let me give you first a nutshell description of it and then come back and give you specifics. We moved to dismiss. In moving to dismiss, we put before the Court certain internal floor documents which had been referenced in their complaint. They opposed, of course, and they sought leave to amend. But I have not yet heard on this appeal by them an accurate description of what it was that they asked for when they sought leave to amend. They said they wanted leave to amend if the Court considered the documents, and the proffer they made was we want to amend to discredit those documents. That is all that they asked the district court to do. The district court decided on the motion to dismiss that she would not consider those documents. She felt it was not required by the Reform Act and not appropriate here. So she didn't take them into consideration and thereby mooted their request for leave to amend. She went on, however, to also decide that the proffer they made would be futile. It would not advance the case. The case was going nowhere. Plaintiffs, interestingly enough, don't, it seemed to after the fact, have agreed. That particular proffer would be futile because the amendment they are now proposing to the Court is not one which seeks to discredit those documents. Roberts. You say the amendment now proposing, you mean the fourth complaint? Yes, the fourth, this proffered fourth amendment complaint, doesn't seek to discredit those documents, but goes back again and embraces them and adopts them. They also appear to have made a decision that they clearly did not want to present this to the district court, but to try another forum, namely this Court. They then went through this interesting tactic of lodging, not filing, but lodging this complaint in the district court way after this case had been appealed and, indeed, two days before they filed their opening brief on this appeal. Clearly, what's in that, they kept away. So they have had jurisdiction to go to file it with the district court? No, Your Honor, that's why they lodged it. Yes, well, I assume, so what's, you think it would have been better if they hadn't lodged it? I think the whole thing, the whole record shows, Your Honor, they clearly did not want the district court to look at what they had. I don't know why, why do you say the record shows they didn't want to? Because, Your Honor, they had a perfect opportunity to go back to the district court with this document. They now go with a different approach and come up here. And this Court to decide it in the first instance. A motion for reconsideration? Yes. Or a std or something? Keep in mind, and let me go back and focus on exactly what they asked for, because if you look, they, what we submitted to the Court were these PSFRs, which he's been waving up here today like they're smoking guns, and they're hardly that, and the PMRs. They had been alleged by the plaintiffs in their Third Amendment complaint, and they said those documents will show that Floor, in fact, was internally forecasting large losses on Rubig and not booking them. We asked the Court, not under judicial notice, but under incorporation by reference, okay, look at these documents. You will see that, in fact, they reflect that the company was, in fact, estimating minor losses and was booking them. In response, plaintiffs obviously opposed the motion. They asked for leave to amend. The leave to amend is supported entirely by a single thing, which is the House Declaration, which is in the record at 313. The House Declaration says, and I'm going to quote from it, should the Court require additional details in light of defendants' exhibits, and if the Court considers the contents of defendants' exhibits or their interpretation of the data, plaintiffs request leave to amend. That's if the Court looks at these documents. They go on to say, and I think this is even more dispositive, they say, plaintiffs request leave to amend the complaint to address the contradictions, discrepancies, and omissions in defendant submission. That's it. They do not ask for some broad relief, broad permission to amend. They do not, contrary to what they're saying here now, ask the Court for permission to file an amendment that would say more about their sources of information. They do not, contrary to what they're now saying on appeal, they did not ask the Court for permission to amend to show these documents somehow supported their claim. They keep changing their position in this case. Kennedy. Well, after they made their submission, the district judge said what she thought was wrong, what was missing, right? So isn't it understandable that they would try on appeal to address what the district court said the problem was? But they didn't do that, Your Honor. What they, here's, in fact, what they did. And they're, if you read the House Declaration, it's 22 pages long, it goes on and on about how these documents are not reliable, these documents are misleading, that there are supposedly better documents out there that will show the reality of what the company was estimating, although they never really specify with any degree of specificity what those are. That's what they presented to the district court, don't pay any attention to these documents, they're misleading. Now, is this before or after the district court's ruling? This is at the time of the ruling. Their motion for leave to amend was filed in their opposition brief on the motion to dismiss. Yes. Well, that's what I thought. So they made all the arguments as to why they thought it was all right. And if it wasn't all right, why they should be allowed to amend. And then the district court gave its views as to, or its rulings, as to why what they presented was inadequate. And now on appeal, they are making arguments as to why the district court's position is wrong and how they can, in fact, show what the district court said they couldn't. Okay. But, Your Honor, here's the problem. The issue is his use of futility. Is the district court right that it's clear they can't do anything? To present a case. So on appeal, what the issue that they have to answer is, is it really clear that the district – the reasons the district court gave for saying it's clear they can't amend, is that correct? Or do they, in fact – is it not clear that they can't add material that would solve the problem? Put your – Your Honor, put yourself in Judge Stoller's shoes for a moment. She sees an opposition to the motion and makes all of the arguments about why they've put an adequate complaint. She also sees them saying, we want leave to amend if you grant the order dismissing the complaint. And here is all that we would offer you. What we would offer you is complaint that, in fact, discredits documents that we previously had relied on. That's all we would offer you. It doesn't say give us leave to amend broadly to comply with the Reform Act or anything else. It's, if you consider these documents, you consider them weighty. We want an opportunity to amend to deal with those. That's all that was presented to her. She decided not to even consider the documents, thereby, in my view, mooting that particular – but then she goes on. She looks at it and says, look, this would be futile, and specifically referring to the House declaration. And why would it be futile? Well, where are we going here? In the third amended complaint, you rely on these documents. You say the PSFRs, the PMRs will show that the company was estimating these. Now, when they're presented to the Court, you're saying, oh, no, those aren't the documents. There are some other documents out here. In fact, those documents are unreliable, and that would be shown. Now, if you're a district judge, I think you're sitting there saying, we are going nowhere here. They're not offering me anything specific that's new. I might say, as Judge Silverman said, in this technical and demanding corner of the law, the drafting of a cognizable complaint can be a matter of trial and error. That's what I might say. Well, Your Honor, how many trial and errors do you have? Well, as many as they had in eminence capital and in this case. Well, there's a difference. Let me talk about eminence capital, because I think there are some important distinctions here. But this case is a lot more complicated than eminence capital. Yes, Your Honor. But this has been the issue from the outset. This has been the issue that we have moved on every time, that they have failed to allege specific facts showing that the company was, in fact, estimating losses and not booking it. That has been the argument from day one through all of the motions to dismiss, and they keep futzing around with it. And now what's presented to the district court is, well, we're going backwards. We said these are the ones that solve it, and then, well, no, those aren't the ones that solve it. In fact, those are not reliable. I think it's certainly within the discretion of the district court at that point, and not an abuse of discretion, for her to say, enough is enough, you've essentially lost credibility with me. So are you saying that what was in Judge Stotler's ruling was strictly sort of looking only at the evidence and the discussion, essentially taking out entirely the consideration of these documents, so that her ruling was strictly based on the complaint as it existed, the arguments that you made in response, setting aside the documents so that all that she had before her and all she was doing was ruling on a pristine record without any consideration of the how declaration or the documents that you had proffered? That's correct. In terms of the motion to dismiss, when she considered their request for leave to amend, she specifically said, I have reviewed and considered the how declaration. In other words, the proffer that was being made and the request that was being made there, which, again, was this is, you know, if you're a judge, you're saying, okay, this is all I can offer going forward. This isn't going to be good enough, so why am I allowing this case to go forward? Now we have the Fourth Amendment complaint. Are we allowed to peek at that? Yeah. Let's talk about that, Your Honor, because I think that's an interesting one as well. I think this is a bizarre. On the issue of futility. Right. I think this is a bizarre appeal, because normally on an appeal, you're being asked to review a decision that's made by the court below. And if you step back and look at it, that's really not what they're doing here. The decision that they asked the court to make below was, will you let us amend the complaint to discredit these documents? That's the decision they asked the court to make. That's what the how's declaration asked for. That's what the court decided. On this appeal, they do not argue that that was wrong. They don't argue that they should have been given leave to file a complaint that discredited the documents. And in fact, the fourth, proffered fourth amended complaint, the proposed complaint, doesn't do that. It goes back and relies on those documents again. So you're in this strange situation where what the – what's happened is they've really come to this Court in the first instance and said, we want to try a new approach. We want to now put in some allegations about sources and we want a fresh start in the Ninth Circuit. We didn't put this to the district court, and they clearly didn't. That proffer they made in the how's declaration didn't talk about we want to allege more facts about our sources and show how wonderful they are. So you're really being presented with it in the first instance. You know, there is a general rule against not doing that. And the only thing they can offer is this Orion case. Well, the Orion case, if you look at it, is an unusual case on its facts. It's not this case. In that case, there was an appeal of the dismissal. The Court hadn't looked at futility below. The respondent on appeal, the appealee on appeal, said, well, wait a minute. If you're going to overrule the dismissal, there's a futility argument. And then in reply, the plaintiff's come in and say, well, you know, don't worry about futility. We can correct that. So it's an unusual, I think, one-off case. That's it. And there is no real authority in the Ninth Circuit, as opposed to the Seventh Circuit, for the idea that on appeal, you can amend your complaint, present something completely new, and go back to the district court on it by having an appellate court look at it for the first time. I think that violates the basic principle that appellate courts don't look at things in the first instance that were not presented to the district court. Suppose, I gather, the way you view this Fourth Amendment complaint, it's really, I think you almost said, a new theory. Suppose this was just an – suppose it just included facts and evidentiary material and details that a court had said below, I think it's futile because I don't think you can add enough particularity to this case. And they said, oh, yes, we can, and they did it here. Would your view still be the same, that they couldn't tell you that on appeal? It'd still have to do with the issue of futility and whether, based on what had been pled before that and the court's rulings on that, whether they should be given yet another chance, but that isn't the issue here. No, no. But so what – your argument is basically that it's because it's a different theory than they offered to the district court. Well, Your Honor, it's not only a significant theory, but it's completely at odds with what they said to the district court they would amend to do. If Judge Sodler saw this complaint, she'd look at it and say, well, wait a minute, this isn't what you asked me for leave to amend to do. You asked me for leave to amend to actually do the opposite, to say these reports are discredited, they're not reliable, they're misleading, and now you're relying on them again. It's the opposite of it. Well, Mr. Shvetkov said in his opening argument that what they said was that your interpretations of the report were unreliable, that he didn't object to Judge Sodler, to the reports themselves, but what you said they stood for. Is that not correct? It's not correct, Your Honor. Read the House declaration. It's painful reading because it's, you know, kind of rambles all over the place. But if you read it, you will see that it basically says these documents are not reliable. I'm quoting from it. These documents are misleading. They are incomplete. And there are – this document – this set of reports the company prepared that would show that those were not reliable and that they didn't include all of the losses, and this other one – well, you know, Were they saying the documents inherently were unreliable or the way they were being presented and argued by defendants? They said not reliable. Where did they say that? The documents – What you read, where did they say that the documents are – Let me pull my cap down. Paragraph – on page 4, in paragraph sub E, this first special audit produced detailed data showing that the forecasted and actual costs in the CPS and PSFR, PFSR were not reliable. In the next page, on page 6, rather, subparagraph I, finance personnel report that using this top as a means of measuring profitability, quote, is a misleading and outdated calculation. And then basically the theme of it is, no, no, these aren't the reports, these don't include everything, there's some other reports. I would point out – But where do they say there are other reports? They refer to these special audit reports, and then towards the end of the declaration, they talk about something called project management status reports. I would point out that in their amended – in their proposed complaint, there's no – they mention the special audit reports, there's no specificity. They don't even mention the project management status reports, and they go back to saying that these reports that we put before the Court are, in fact, the reports. In fact, let me comment on that, because I think this last complaint they filed is, frankly, the weakest complaint that they have filed to date. It does not offer anything new. If you look in there and try to find some new facts, you won't find them. All they offer are some assertions about, you know, okay, these are who our witnesses are. But when you look at what the witnesses have to offer, and I think 10 or 11 of them really have nothing to offer that's relevant to the key issue in this case, which is, was the company internally estimating losses that were larger than what they were booking? And when you get to that issue, I submit this Fourth Amendment complaint, this proposed complaint, concedes that the company was not. Because this proposed complaint, the fourth complaint, says two things. It says their witnesses, all their finance witnesses, their star witness, CW1, says that the PSFRs were the backbone of the company's financial reporting system. They were the report that reflected the company's best estimates of loss. All of their witnesses say that. Now, if you go back and you look at the Howes Declaration, paragraphs 11, 12, and 14, those same witnesses, according to Mr. Howes, say that the numbers reflected in those reports were, in fact, the numbers that were booked. Those were the booking position of the company. Best estimate booked by the company. Where is their case? I think they have pleaded themselves out of court with what they're proposing to offer here, not advance the ball. Well, can I just, I understand that one can argue, you know, what that means and all of that. But I'm just going back and re-reviewing this. When I had read this originally, the Howe Declaration, I had understood what they were saying was, look, you guys have come forward with these documents. We hadn't seen these actual documents before now. But now we look at them, and we knew they existed, but we hadn't seen the actual ones you presented. And having looked at them, we think, for our witnesses, that they are incomplete and that there's a lot more to be told. We think, Judge Stotler, that we've alleged enough with our current complaint. But if you're going to consider these, in other words, if that's what this case is all about, what the defendants are putting forward, then we'll go ahead and amend more to say why your rebuttal doesn't count. Now, Judge Stotler, you're making it a little more stark, and I am trying to put myself in the position of Judge Stotler. It's not clear that Judge Stotler necessarily would have read this as saying, we just want to come back and make a targeted analysis on just these documents. Indeed, in doing what their rebuttal would be, would necessarily be expanding on their argument as to why their case, with these huge losses and so on, dealing with the booking and perhaps other things, would alleviate whatever concerns she might have if she, in fact, found that their current amended complaint wasn't adequate. So she says, okay, now she does say, at some point, having considered all of the submissions, including the Howe Declaration, I conclude it's futile. And I'm a little bit troubled sitting in this seat trying to project myself sympathetically into Judge Stotler's state of mind as to what she was interpreting this as. I could equally interpret it as saying, much as you're suggesting, I don't see this going to be there. Even if they amend, all of this proffered information doesn't seem to move the ball forward. And then that puts us now in the position of saying, okay, if we look at these, do we consider that there is enough? We don't look at the proposed Fourth Amendment complaint. Is there enough to get past the dismissal hurdle, or at least where she should have allowed an opportunity to amend, whether or not we go so far as to rule at this stage on whether they actually get past the dismissal hurdle? What's your, I realize it's more of a statement than a question, but I'm trying to take you up on your invitation to put myself in Judge Stotler's position. I think if you look at their proposed amended complaint, and you really look for new facts, you will not find any. And we have submitted a chart showing where it is in the last complaint. They never even responded to that. There really aren't any new facts asserted. But the only thing they assert are, in some cases, ambiguous descriptions about who these witnesses are, but they know. The interesting thing is that if you read, you know, the prior versions of the complaint, you'd get the sense that, well, okay, they've got either documents or witnesses that support all of this stuff. When you actually look at what the witnesses had to offer in the way of information, and you contrast it with what was said in prior complaints, they don't have much support for any of the stuff that they were asserting. There's a huge amount of just speculation and accusation that's going on here. So there's not a whole lot new. But to the extent it's new, it clearly was not presented to her below. They didn't make any effort to do that. They could have very well gone to her and asked her after she ruled on it. If they were surprised, for example, by the fact that she decided not to consider the documents going back and saying, well, you know, can we amend to do this, they didn't. They clearly came up here rather than giving her a chance to do that. They've presented new stuff, if there is any new stuff, to this court for the first time. And that's totally inappropriate. It should not be encouraged. One other comment I'd like to make, they keep viewing this liquidated damages thing as the big solution for them. I would point out that's been in their complaints, their prior complaints. Court found it inadequate. They haven't appealed that, so they're stuck with it. But there's something very significant here. They talk about all these witnesses saying that liquidated damages were going to happen, that were going to happen. None of these people say that actually liquidated damages penalty was assessed. None of them say that, because they weren't. And so this great salvation that liquidated damages were the thing that made these internal forecasts wrong is just unsupportable. Thank you, counsel. If there are no more questions, I'll be happy to sit down. Thank you. You know, Mr. Daniels just told you that there were no liquidated damages assessed. There's no evidence of that in this record. He just told you that. There's nothing in the record that says that. The record says that five witnesses, finance department witnesses, the consultant for Saudi Arabia, said there would be liquidated damages. He just testified. Now, the other thing that he did was make this an either-or situation. Judge Fisher, you said it was stark. He said we sought to – that in the district court, we sought to discredit the documents they presented, not embrace them. It's not either-or, it's both. We said – and he wants to say that we didn't object to their interpretation. ER-301, this is our opposition to the motion to dismiss. Consequently, judicial notice of defendant's interpretation of the exhibits or their data is improper. That's the nature of our objection. And now let's look at the Howe's declaration at page 327 of the record. Yes, in places he said it was incomplete, Judge Fisher. Yes, he said it was incomplete, and we believe they are incomplete. But remember, Judge Stotler ruled not that we didn't have sufficient facts, but that we didn't have facts about the content of the documents. We said they were incomplete, but we also said at ER-27, 327, in sum, a review of exhibits A through F show a $25 million decrease in the merits of the contents of the reports, and she still ruled that way.  So in part, we said we can explain these exhibits in favor of plaintiffs, and in part, we – these opened the door to an indication that they're hiding more. There's nothing inconsistent in that position to the position we're taking in this Court. Everything in the Howe's declaration, which is – talks about witnesses, the finance director, the project director, but he didn't list them witness by witness. The difference between our submission below and the submission here is the witness by witness explication, and I did that because of the Cabletron decision and the Alcatel decision in other circuits. This circuit has never required a witness by witness explication of it, but I anticipate that that might be what you do in light of what the other circuits did. So I wasn't going to come here just on the Howe's declaration. I thought you ought to see it witness by witness. But the facts are the same, and it's not an either-or, embrace or discredit. It's both. We embrace the parts that support our view, and we question the parts that are inconsistent and incomplete, and that's a perfectly consistent position for the plaintiffs to take. And our proffer below is based on what our witnesses tell us. Their explanation of the documents is what the lawyers have told you in the briefs. That's a very different submission, and you should keep that in mind when you decide this case. So why didn't you go back to the district court and say, whoa, you haven't looked at these. Now the argument you just made, Rule 60, motion for reconsideration. Well, first of all, we point out in our reply brief that once judgment has entered, we're not on the obligation to go back to the district court under Rule 59, under Rule 59, to get her to take another look at it. We have made a substantial proffer to her. It wasn't the facts weren't going to get any better. What happened was that. But now what you're doing is saying now you're going to make a different proffer to us through your fourth proposal. Yes. But it's based on the fact that once the time for appeal and, you know, 10 days goes by and you can't make a Rule 59 motion, I took one look at this and saw the evolving case law and the other circuits, and I said, look, I can appeal this on leave to amend, but not without a witness-by-witness explication. And so I added that based on my judgment as a professional lawyer that without a witness-by-witness addition to what was proffered, the facts are the same, Judge Fischer. The facts didn't change. It's the factual basis. What the. If we ignore the witness-by-witness requirement, you're satisfied to have us decide whether it's clear that it's futile to amend on the basis of the material you did present to Judge Stotler? No, it's not to you. You mean not to you. Remember, you're asking you're satisfied to have us decide the question. No, I think the evolving law requires us to present to you the witness-by-witness explication. Well, I said if, suppose we say it's not necessary to present witness-by-witness explication, then would you be satisfied to have the issue of whether it's clear that it would be futile to amend? That's the issue. To have that decided on the basis of the material that you presented to Judge Stotler. That was actually in front of her. Yes. Yes. It's the same facts. Only thing it comes to, if you look at the Howe's declaration, he refers generally to the finance personnel, to project personnel, and under the evolving case law, I didn't think that would fly, especially since this Court has the toughest standard in the country. If the other courts are requiring witness-by-witness explication. Well, we may have had a case which imposed the highest standard. We've tried to make up for that somewhat in what Judge Hilderman said, that because we have the highest standard and it's so hard to meet, the trial judges are supposed to give people opportunities by trial and error to keep trying to amend. So in one sense, it's the highest. In the other sense, we're giving plaintiffs more of a chance to correct and try and try again. I appreciate that. But, you know, Mr. Vanier would be here arguing where's the witness-by-witness explication if I didn't present it. I mean, he's a good lawyer, and he's characterizing our position in a way to make it come out for him. But I'm telling you his characterization is a grudging characterization of the arguments we presented to Judge Stotler. If she – how can she rule on the merits that we haven't given her the contents of the documents when the defendant presented the documents to her? And we objected to their interpretation. We never opposed their request for judicial notice. And it was Mr. Vanier at page 212 who said, well, you don't have to look at the documents. Why? Because Mr. Howes presented a very serious explanation of those documents that favored the plaintiffs, that there were $25 million in costs that were not reflected. All right. Anybody have any other questions? Thank you, Mr. Sertak. Case, case argued, will be submitted. Thank you both for a very helpful and excellent argument. I concur. Well-argued case. Same here.
judges: Reinhardt, O' Scannlain, Fisher